THEODORE JEROLAMAN, RESPONDENT, v. THE TOWN OF BELLEVILLE, APPELLANT.

Submitted December 11, 1916—Decided June 18, 1917.

1. A municipality has no right, by artificial drains, to divert surface water from the course it would otherwise take, and cast it, in a body large enough to do substantial injury, on land where, but for such artificial drains, it would not go.

2. Evidence legal for some purpose cannot be excluded because a jury may erroneously use it for another purpose. The opposite party's protection against this is to ask for cautionary instruction.

On appeal from the Essex Circuit Court.

For the appellant, *Harold A. Miller.*

For the respondent, *Pitney, Hardin & Skinner.*

The opinion of the court was delivered by

PARKER, J.. The suit was for overflowing plaintiff's lands by water, and the complaint, in two counts, alleged two different dates when such overflow occurred. The jury found for plaintiff in the sums of $179.18 on the first count, and $2,935.66 on the second count.

Plaintiff was the owner and occupier of a coal and lumber yard on the northwest corner of Cortlandt and Jerolaman streets in Belleville., Jerolaman street runs substantially east and west. One block west of Cortlandt street and running parallel with it is the Paterson and Newark branch of the Erie railroad. A block further west, up a sharp grade, is Washington avenue, an important highway between Newark and Paterson. Next west of Washington avenue, and still further up the hill, is Linden avenue. North of Jerolaman street and east of Linden avenue was a spring, whose overflow ran generally slightly south of east, always to the north of Jerolaman street, passing under Washington avenue down the hill, under the railroad through a culvert, and

across plaintiff's lands to the corner of Jerolaman and Cortlandt streets and so to the Passaic river. Previous to the occurrences giving rise to the suit, the town had adopted a general plan of regrading, which involved, among other things, the elimination of a "hump" in Jerolaman street above Washington avenue, which had retarded the flow of water down the hill; and these changes, as claimed by plaintiff, led to the flooding of Jerolaman street in heavy rains, which resulted in cutting gullies and carrying away of soil, so that the town undertook to prevent this by banking the east side of Washington avenue, which prevented the water from running down Jerolaman street, and, as plaintiff claimed, turned it in large measure into the natural water course already described. The case presented under the first count was that in the storm conditions of November 11th, 1911, this artificial diversion caused an overflow of plaintiff's land whereby he was damaged.

The second count, as amended, rested on the same acts of defendant in diverting the water, and in addition charged that early in 1912 the town connected the natural water course with a covered drain just east of plaintiff's premises, and put catch bars across the opening, so that in March, 1912, during storm conditions, the excessive volume of diverted water flooded plaintiff's premises as before and in addition the opening of the covered drain became blocked by debris caught by the bars and the water backed up on plaintiff's premises.

1. There was a motion to nonsuit on each count, and it is now urged that there should at least have been a nonsuit as to the first count. For this, the case of *Miller* v. *Morristown*, 47 *N. J. Eq.* 62, affirmed in this court in 48 *Id.* 645, is relied on as the leading authority. The argument proceeds on the assumption that plaintiff's evidence showed nothing more than a regrading of streets and diversion of water consequent thereon. If this were true, defendant's point would be well taken under the first branch of the Miller case; but the evidence tends to show in addition, and the jury evidently found, that water flowing down Jerola-

man street had been intentionally diverted therefrom by special provision for that purpose and thrown on plaintiff's land. This was a very different thing from mere regrading, and brought the case under the second branch of the Miller case where it was held that such conduct is an actionable injury. The law was stated by the court in the precise language of the syllabus to the case cited, on both branches, and the jury was justified in finding that the conditions of the second proposition were met. The same rule was laid down by this court in the later case of *Kehoe* v. *Rutherford,* 74 *N. J. L.* 659, where the conditions closely approximated those in the case at bar. If the plaintiff's evidence were believed, the defendant for its own convenience diverted the water naturally flowing down Jerolaman street and turned it over the plaintiff's land. This it had no right to do without making proper compensation.

2. The same considerations dispose of the point that there should have been a direction of verdict for the defendant. There was a fair conflict of evidence, and a direction would have been improper.

3. Error is further charged in that the court permitted evidence of changes made by defendant in the drainage system after the injuries complained of.

Ordinarily it may be conceded such evidence is irrelevant and injurious, in tending to operate as an admission of guilt. In the present case, however, it came in on the cross-examination of defendant's engineer, who had denied in his testimony that the flood water had run down the street in any such quantity as to do material damage to the roadway and lead defendant to provide for it in other ways. This was a material point in plaintiff's case, and to meet it he was entitled to bring out that defendant had taken care of this storm water by a special sewer; the inference, of course, being that unless there were a material amount of storm water, the culvert would not have been built, and its building was evidential of the incorrectness of the witness' statement. In this aspect it was competent; its incidental harmfulness as tending to show an admission of liability could and should

have been met by a proper request to limit its application in the charge. *Trenton Pass. Railway Co.* v. *Cooper,* 60 *N. J. L.* 219, 223; *Perry* v. *Levy,* 87 *Id.* 670.

4. Finally, it is claimed that the court erred in charging the jury as follows in response to plaintiff's request:

"If the jury find that, at the time complained of, water which in its natural course according to the grade of streets and levels of adjacent property, would not have reached plaintiff's land, was artificially collected and diverted by the town to the plaintiff's land, to his damage, it will not excuse the town that the water years before, by another route, had reached the watercourse that ran through plaintiff's land. In other words, if on the 11th of November, 1911, and the 12th and 13th of March, 1912, water which would not have come to the plaintiff's land in any way was thrown upon it, the fact that at some prior time it had come upon the plaintiff's land by some other course is past history which does not concern the court and jury."

The objection to this instruction, stated in the language of appellant's brief, is this: That the jury were told "that they were not concerned with the question whether the same volume of water, from the same sources, prior to the acts of defendant would or would not have reached plaintiff's land by the natural watercourses of the surrounding country."

If by "acts of defendant" counsel means the general system of regrading, rather than the particular act of diversion at the crossing of Washington avenue, the charge was correct. If, as was held in Miller *v.* Morristown, the town might lawfully adopt a new set of grades causing incidental changes in drainage, it is that system, and not the natural drainage of an uninhabited country to which owners are to conform and which they are entitled to assume will be maintained. If by "acts of defendant" the particular diversion is meant, we answer that a reading of the instruction will demonstrate that no such interpretation as that indicated by appellant can reasonably be placed upon it; for the comparison is between the "natural course, according to the grade

of streets and levels of adjacent property," and the "artificial collection and diversion to plaintiff's land."

The judgment will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 15.

*For reversal*—None.